NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| KIRSCH RESEARCH AND DEVELOPMENT, LLC, <br><br> Plaintiff, <br><br> v. <br><br> GAF MATERIALS, LLC, <br><br> Defendant. | Civil Action No. 20-13683 (JMV) <br><br><br><br> OPINION |

**FALK, U.S.M.J.**

Before the Court is the motion of Defendant, GAF Materials, LLC ("GAF"), to stay this case pending *inter partes* review of one of the patents-in-suit. [ECF No. 110.] Plaintiff, Kirsch Research and Development, LLC ("Kirsch"), opposes the motion. No oral argument was held. *See* Fed. R. Civ. P. 78(b). For the reasons set forth below, the motion is **GRANTED**.

**BACKGROUND**[1]

This is a patent infringement suit. Kirsch claims infringement of two patents – U.S. Patent No. 6,308,482 ("the '482 patent") and United States Patent No. 8,765,251 ("the '251 patent"). The patents share the same subject matter – that is, "roofing underlayments and methods of making them." GAF sells a product called FeltBuster,

---

[1] The background section is drawn from the parties' papers and limited to what is necessary to decide this motion. Direct citations are at times omitted.

which Kirsch claims infringes the two patents.  GAF has been selling FeltBuster for approximately 6 years.

On April 24, 2020, Kirsch filed the present Complaint in the United States District Court for the Eastern District of Texas, alleging infringement of both the '482 and '251 patents.  The same day, Kirsch also filed a Complaint with the United States International Trade Commission ("ITC") against GAF (and a number of additional parties) alleging infringement of the '251 patent.

On July 29, 2020, one of GAF's co-respondents in the ITC proceeding, Owns Corning Roofing & Asphalt, LLC ("OC"), filed a petition for *inter partes* review with the Patent Trial and Appeal Board ("PTAB"), seeking review of all claims of the '482 patent.

On September 30, 2020, the Honorable Ed Kinkeade, U.S.D.J., transferred this case from the Eastern District of Texas to the District of New Jersey.

On November 10, 2020, GAF filed a separate request for *inter partes* review of the claims of the '482 patent.

On December 2, 2020, Administrative Law Judge MaryJoan McNamara issued a detailed *Markman* decision in the ITC proceeding, construing the disputed terms of the '251 patent.  According to GAF, the *Markman* decision was favorable to its position.  In all events, three days after ALJ McNamara's decision, Kirsch canceled the remaining depositions in the ITC proceeding, moved to stay the proceeding, and sought dismissal of

its own Complaint. On December 9, 2020, the ITC granted Kirsch's request to cancel the ITC proceeding.

On February 18, 2021, the PTAB granted institution of IPR based on the OC Petition after finding a reasonable likelihood of success on its asserted grounds of invalidity. A decision is due by February 2022.

On March 12, 2021, GAF filed the present motion to stay this case pending *inter partes* review. The motion has been opposed and is fully briefed.

On May 25, 2021, the PTAB granted GAF's request and instituted a second *inter partes* review of the claims of the '482 patent. Pursuant to PTAB guidelines, a decision is expected in May 2022.

GAF contends that the entire case should be stayed pending the outcome of the ongoing *inter partes* review. According to GAF, although only the '482 is subject to *inter partes* review, there is "substantial overlap" between it and the '251 patent. Moreover, GAF contends that the two patents cover the same subject matter; have the same sole inventor; same assignee; include many of the same terms; and are asserted against the same GAF product. Finally, it contends there will be no prejudice from a stay since this case is still early in the proceedings and Plaintiff has not moved for any injunctive relief.

Kirsch counters that staying the case will cause it prejudice because the parties are competitors in the market, and that allowing continued infringement will reduce its

3

market share. It further contends that the '251 patent is not subject to *inter partes* review, and therefore, there is no benefit to staying the current case.

## LEGAL STANDARD

### I. *Inter Partes Review*

In 2011, Congress passed the America Invents Act "to establish an *inter partes* review proceeding within the Patent and Trademark Office with the goal of creating a more efficient and streamlined patent system and of limiting unnecessary and counterproductive litigation costs." *Kirsch Research & Development, LLC v. Epilay, Inc.*, 2:20-cv-03773-RGK-JPR (C.D. Cal. May 7, 2021). Under the applicable process, any party other than the patent holder may initiate an IPR proceeding to challenge patentability with a year of being served with a complaint alleging patent infringement. *Id*. After a party has filed an IPR petition, the patent holder has three months to file a response. *Id*. Thereafter, the PTAB decides within 3 months whether to grant the request for *inter partes* review. *Id.* The PTAB grants IPR requests "if there is a reasonable likelihood that the petitioner would prevail with respect to at least 1 of the claims challenged in the petition." *Id*. (quoting 35 U.S.C. § 314(a)). Once the PTAB grants review, "it must issue a final determination within a year after the petition is granted." *Id*. Following the conclusion of IPR proceedings, a petitioner is estopped from asserting that a patent claim is invalid "on any ground that the petitioner raised or reasonably could have raised during that *inter partes* review." *Id.* (quoting 35 U.S.C. § 315(e)(2)).

## II. <u>Motion to Stay</u>

District courts have broad powers to stay proceedings. *Bechtel v. Laborers' Int'l Union*, 544 F.2d 1207, 1215 (3d Cir. 1976). Staying a patent case during PTAB-related proceedings is discretionary. *See Viskase Corp. v. Am. Nat'l Can Co.*, 261 F.3d 1316, 1328 (Fed. Cir. 2001). The party seeking a stay of a civil litigation bears the burden of demonstrating that a stay is appropriate. *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). In the patent context, courts have "consistently recognized the inherent power of the district courts to grant a stay pending reexamination of a patent." *Procter & Gamble v. Kraft Foods Global, Inc.*, 549 F.3d 842, 849 (Fed. Cir. 2008); *see also Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1426-27 (Fed. Cir. 1988). ("Courts have inherent power to manage their dockets and stay proceedings, including the authority to order a stay pending conclusion of a PTO reexamination.").

This District has recognized a generally liberal policy toward granting stays pending patent reexamination-type proceedings. *See, e.g., Mondis Technology Ltd. v. LG Electronics, Inc.*, 2015 WL 7012747, at *5 (D.N.J. Nov. 12, 2015); *Sabert Corp. v. Waddington N. Am., Inc.*, 2007 WL 2705157, at *5-6 (D.N.J. Sept. 14, 2007); *Cima Labs Inc. v. Actavis Group HF*, 2007 WL 1672229, at *9 (D.N.J. June 7, 2007). This policy arises due to the potential for waste of a court's time and resources when a USPTO decision could drastically alter the nature of the litigation. *See WABCO Holdings, Inc. v. Bendix Commercial Vehicle Sys.*, 2010 WL 2628335, at *2 n.2 (D.N.J. June 28, 2010).

When courts have denied a stay pending USPTO proceedings, it has most often been because the case was in a "late state of litigation, [] discovery was or would be almost completed, or the matter had been marked for trial." *Mondis Technology Ltd.*, 2015 WL 7012747, at *5 (quoting *GPAC, Inc. v. D.W.W. Enterprises, Inc.*, 144 F.R.D. 60, 64 (D.N.J.1992)).

In deciding whether to stay a case pending reexamination of a patent, courts frequently consider three factors: (1) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party; (2) whether a stay will simplify the issues and the trial of the case, and (3) whether discovery is complete and a trial date has been set. *See WABCO*, 2010 WL 2628335, at *2; *APP Pharma, LLC v. Ameridose, LLC*, 2011 WL 816622, at *2 (D.N.J. Mar. 8, 2011) (citing *Xerox Corp. v. 3ComCorp.*, 69 F. Supp. 2d 404, 406 (W.D.N.Y.1999)).

## DISCUSSION

After balancing the relevant factors and considering the circumstances presented, the Court concludes that a stay of this case is warranted.

### A. Prejudice to the Non-Moving Party

The Court first considers whether a stay would unduly prejudice or present a clear tactical disadvantage to Kirsch. *See Stryker Trauma S.A.*, 2008 WL 877848, at *1. In analyzing this factor, the Court weighs whether disadvantages from any delay are outweighed by advantages of permitting the USPTO to complete its reexamination before

proceeding with the case.  *See ICI Uniqema v. Kobo Prods., Inc.*, 2009 WL 4034829, at *2 (D.N.J. Nov. 20, 2009).  "[D]elay inherent to the reexamination process does not constitute, by itself, undue prejudice." *CCP Sys. AG v. Samsung Elecs. Corp.*, 2010 WL 5080570, at *3 (D.N.J. Dec. 7, 2010).

Kirsch claims that a stay would result in prejudice because they would lose market share and there would be a loss of evidence and witnesses.  The Court does not discern undue prejudice to Kirsch from a limited stay resulting from *inter partes* review.

First, the parties do not seem to dispute that the marketplace for roofing underlayments is a crowded market.  In fact, GAF claims that there are over 20 underlayment sellers on the market and 64 different products.  (Def.'s Reply Br. 2-3.)  Kirsch claims that GAF is a direct competitor; perhaps, but this clearly not a one-versus-one product or party market.  Indeed, GAF states that it primarily sells its FeltBuster product to Home Depot and Lowes, while Kirsch does not sell its product to those retailers and that the parties are not really competitors at all.  At a minimum, there is some question as to how "direct" the parties compete.

When courts generally find prejudice related to a stay, it is because the parties are directly competing in a specific market, head-to-head, and there is some tangible evidence that a stay will cause harm.  *Cf. Nippon Steel & Sumito Metal Corp. v. Posco*, 2013 WL 1867042 (D.N.J. May 2, 2013); *see also The Proctor & Gamble Co. v. Team Technologies, Inc.*, 2014 U.S. Dist. LEXIS 17112 (S.D. Ohio Feb. 11, 2014) (denying

7

stay when parties were direct competitors that sell products head-to-head and at different prices). Here, the parties are best secondary competitors and Kirsch does not identify any actual market loss that would result from a stay. Speculation of this type unsupported by any evidence is insufficient to establish true risk of market share loss. A crowded market, where the parties generally seem to sell products differently and not directly head to head, means that a stay is unlikely to cause any prejudice, let alone undue prejudice. *See, e.g.*, *Depomed Inc. v. Purdue Pharm L.P.,* 2014 WL 3729349, at *4 (D.N.J. July 25, 2014).

Two, GAF started selling its allegedly infringing product 6 years ago. In that time, the '482 patent has expired. And despite the passage of six years, Kirsch has not sought to move for injunctive relief in this case. It is true that there could be many viable reasons for this strategic decision that go beyond the context of this motion.[2] Nevertheless, the fact that there has been no application for injunctive relief suggests that any harm that may result is more economic and could be determined at later time. *Cf. Canfield Scientific, Inc. v. Drugge*, 2018 WL 2973404, at *3 (D.N.J. June 13, 2018).

Third, Kirsch's filing of the ITC proceeding in April 2020, came with an automatic stay of the claims in this case relating to the '251 patent. The willingness to

---

[2] One such reason could be that there is no injunctive relief available with respect to the '482 patent because is has already expired. *See Kearns v. Chrylser Corp.*, 32 F.3d 1541, 1550 (Fed. Cir. 1994).

8

accept an automatic stay of this case suggests, again, harm that can be compensated by money at a later time and not of an emergent nature.

Fourth, at least one other district court has stayed a federal lawsuit involving Kirsch and the same patents in this case pending IPR review. *See Kirsch v. Owens Corning Research & Dev., et al.*, 20-901 (N.D. Ohio April 1, 2021) (applying prior '482-related stay to '251 patent) (ECF No. 116.)  In so doing, the Court found that a stay "will not unduly disadvantage or prejudice [Kirsch]." *Id.*  This Court also fails to see any prejudice that will result given the absence of identified market loss, the question as to size of the market and how directly the parties actually compete, and the passage in time that has occurred prior to the filing of suit.[3]

Fifth, Kirsch refers to the loss of evidence and witnesses, but the claim lacks specificity and provides no information upon which the Court can discern any prejudice.

Finally, the stay of proceedings is for a limited period of time.  It is not indefinite.  The resolution of the IPR should be complete, pursuant to statute, by May 2022.  Given the value the result of the IPR will provide to the Court, one could assume the case would move more quickly at that time, with the added benefit of saving costs relating to discovery and motion practice that would otherwise result should the case proceed in full now.

---

[3] Both parties have submitted supplemental authority that involves Kirsch and the patents in suit.  (*See* ECF Nos. 114, 116, 119, 121.)  The Court acknowledges that courts have decided the question differently.  But for the reasons set forth herein, the Court believes a stay of this case is the appropriate course.

B. **Simplification of Issues**

The PTAB's two ongoing *inter partes* review proceedings will plainly simplify the issues and strongly weighs in favor of a stay.

At this point, two requests for *inter partes* review of the '482 patent have been granted – including the one submitted by GAF. The purpose of *inter partes* review is to streamline patent litigation and reduce costs. This is powerful support for a stay. *See Nasdaq Inc. v. IEX Group, Inc.,* 2019 WL 8268544, at *6 (D.N.J. Sept. 13, 2019) ("Although every case is fact specific, almost every reported New Jersey District Court opinion that has considered the issue has granted a stay where a reexamination request was pending.").

On two occasions, the PTAB has found sufficient basis to grant the IPR requests relating to the '482 patent, including by GAF in this case. USPTO statistics show that "roughly 62% of instituted PTAB proceedings result in a finding that all challenged claims are unpatentable, while roughly 80% of all instituted proceedings result in a finding that at least one challenged claim is unpatentable." (Def.'s Br. 10.)[4]

There appears to be a strong possibility that the outcome of the IPR proceedings will impact some or many of the claims in the '482 patent. And even if the IPR does not impact *any* claims in the '482 patent, the Court would still benefit from the PTAB's

---

[4] citing USPTO, *Trial Statistics*: *IPR, PGR, CBM; Patent Trial and Appeal Board,* September 2020, http://www.uspto.gov/sites/default/files/documents/Trial_Statistics_20200630_.pdf

review of the prior art references in the proceeding and the patent itself – this alone weighs in favor of a stay. *See Alcon Labs, Inc. v. Akorn, Inc.*, 2016 WL 99201, at *1 (D.N.J. Jan. 8, 2016) (noting "the IPR may not resolve all issues, the case will still be greatly simplified, if only because this Court may make use of the analysis of the PTO thereafter").

Kirsch claims that a stay will not simplify the issues because the '251 patent is not subject to any ongoing PTAB proceeding. However, there is overlap that suggests staying the entire case is still the appropriate course for a number of reasons.

First, the patents share the same subject matter, inventor, contain some of the same claim terms, and are asserted against the same product.

Second, GAF has asserted the '482 patent as part of prior art combinations that allegedly invalidate the '251 patent.

Third, Kirsch has acknowledged a relationship between the patents in its infringement contentions – indeed, Kirsch has apparently relied, apparently exclusively, on its infringement contentions for the '251 patent in order to provide its contentions for the '482 patent.

Finally, the question is whether a stay will simplify issues in the case – not whether it will resolve every issue for every patent in suit. Stays are frequently granted when less than all of the patents-in-suit are subject to PTO proceedings. *See, e,g.*, *Nasdaq Inc. v. IEX Group, Inc.*, 2019 WL 8268544, at *6 (D.N.J. Sept. 13, 2019) (granting stay

11

when PTAB review commenced on only 3 of 6 patents-in-suit).  Thus, even though only the '482 patent is subject to IPR, the Court believes it is virtually certain that a stay will help this case in material ways in terms of simplicity, focus, and elimination of unnecessary time, expense and duplication of discovery.  Indeed, in granting a stay of Kirsch's lawsuit against Owens Corning in Ohio, the District Judge expressly noted that going forward on the '251 patent would "involve piecemeal litigation" because of the "overlapping discovery" related to the two patents.  *Kirsch*, 2020 WL 4582681, at *2.

    C.    **Status of Proceedings**

The third factor the Court considers in evaluating a motion for a stay is "whether discovery is complete and whether a trial date has been set." *Stryker Trauma*, 2008 WL 877848, at *1. This factor weighs against a stay often when the case is in the "late stage of litigation, [when] discovery was or would be almost completed, or the matter had been marked for trial." *Mondis Technology Ltd.*, 2015 WL 7012747, at *5 (quoting *GPAC, Inc. v. D.W.W. Enterprises, Inc.*, 144 F.R.D. 60, 64 (D.N.J.1992)).

This case is still in its early stages.  Pursuant to the operative scheduling order, discovery is open until November 2021.  A proposed revised scheduling order was recently submitted (but not yet entered) extending scheduling order dates.  *Markman* submissions have not been filed yet.  No trial date has been set and the litigation is as a practical matter is still in the very early stages - there has been limited discovery, no claim construction proceedings and a trial date has not been set. *See Monosol RX, LLC v.*

*Biodelivery Sciences Intern'l, Inc.*, 2012 WL 762501 (D.N.J. Mar. 7, 2012) (citations omitted).  For these reasons, this factor weighs in favor of a stay.

## **CONCLUSION**

For the reasons set forth above, GAF's motion to stay the proceedings pending *inter partes* review [ECF No. 110] is **GRANTED**.  An appropriate order will be entered.

 

                                 **s/Mark Falk**
                                 **MARK FALK**
                                 **United States Magistrate Judge**

**DATED: June 15, 2021**